Joseph J. Bleilevens, Appellant, *v.* Commonwealth of Pennsylvania, Pennsylvania State Civil Service Commission, Appellee.

Argued September 7, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Robert L. Webster*, with him *Webster & Hallal*, for appellant.

*Marx S. Leopold*, Assistant Attorney General, with him *Israel Packel*, Attorney General, for appellee.

OPINION BY JUDGE ROGERS, November 7, 1973:

Joseph J. Bleilevens here appeals from an adjudication of the State Civil Service Commission dismissing his appeal from the action by the Fayette County Board of Assistance of removing him from his position as Public Welfare Administrator V, regular status. Mr. Bleilevens' position with the Fayette County Board of Assistance, which he assumed in 1964, was better described by the name "Executive Director" by which his position was titled until the Department of Welfare

changed the names of many positions in the service shortly before the events here in suit.

As Executive Director or Administrator V, Mr. Bleilevens, under his board, was in general charge of the state's welfare programs in Fayette County. In addition to supervising the work of about 100 employes, he was required to form judgments upon and to interpret for his staff and the County Board the statutes and agency rules and regulations concerning the board's work. His responsibilities included that of recommending employes for promotion, in accordance with law and rules and regulations relating to the civil service. He was appointed to his position by the County Board and subject to removal therefrom by it. However, under the Civil Service Act of August 5, 1941, P. L. 752, Section 807, as amended, 71 P.S. §741.807, he was not subject to removal "except for just cause."

The issue here is whether the Pennsylvania Civil Service Commission's adjudication sustaining the County Board's action is supported by substantial evidence. The rules of the Civil Service Commission, 4 Pa. Code, Section 105.15(a), impose upon the appointing authority the duty to go forward in the establishment of the charges on which its personnel action is assertedly based and in so doing to establish a prima facie case in justification of that action. After a careful examination of the record we have concluded that the appointing authority did not support its charges against the appellant at the Civil Service Commission hearing, and that the Commission's adjudication sustaining the County Board's action is not supported by substantial evidence, as the Administrative Agency Law requires. Act of June 4, 1945, P. L. 1388, Section 44, as amended, 71 P.S. §1710.44.

The reasons given Mr. Bleilevens for his removal were: administrative decisions displaying bad judgment; opposition to regional recommendations and De-

partment policy; failure to implement the Commonwealth Affirmative Action program; conduct unbecoming a state official; and insubordination. The Civil Service Commission's adjudication does not address itself to these reasons for dismissal in any ordered fashion. It contains numbered findings of fact followed by an unnumbered paragraph of fugitive and repetitive comments, some factual and others conclusory. Those important to be reproduced are:

"9. Appellant used poor judgment in the handling of the homemaker's case.

"10. Appellant used his own method of personnel procedure rather than one proposed by the Department.

"11. Appellant did not follow policy outlined by the Affirmative Action Program.

"12. Appellant opposed regional recommendations regarding transportation allotments.

"13. Appellant became involved in an automobile accident involving an employe and a bank official.

"14. Appellant was insubordinate when he tried to fill a position by transfer when he had been specifically informed to fill no vacancies in that category.

". . . Appellant promoted persons without notifying the Board of all the condidates' qualifications. . . . The Commission accepts appointing authority's evidence that appellant had change sheets and Affirmative Action forms approved before his Board took action on the appointment . . . although appellant's own witness stated this was never done. . . . Appellant acted contrary to the wishes of his Board in the Davis case. Appellant does not have the confidence of the present Board. . . ."

Although the County Board voted to remove Mr. Bleilevens, it was asked to do so by senior officials of the Department of Welfare, two of whom attended the meeting of the Board at which the removal was voted and who there presented the case against Mr. Bleilev-

ens. This circumstance necessarily resulted in the instant case being prosecuted not by the County Board but by the Department of Welfare. The Department therefore relied upon the testimony of supervisory employes of the Department.[1] The lead witness, Irene J. Britton, first assumed her supervisory position with the Department in March of 1971 and her first visit to Fayette County was on the occasion of the meeting with the Board at which she urged Mr. Bleilevens' removal. Her testimony was based wholly upon information obtained from persons and sources not revealed by the record. It was objected to by the appellant's counsel but was admitted by the Examiner because as he stated at one point "our act . . . permits hearsay evidence, leading questions and matters of that kind." Another of the Department's witnesses, Ms. Charlotte Emery, a Department Field Representative, was similarly permitted to testify, over objection, concerning matters learned from others and to state her conclusion that some of these events described things "badly handled" by Mr. Bleilevens.

The Hearsay Rule is not a technical rule of evidence but a basic, vital and fundamental rule of law which ought to be followed by administrative agencies at those points in their hearings when facts crucial to the issue are sought to be placed upon the record. Indeed, an adjudication of an administrative agency may not be founded wholly on hearsay evidence, although such evidence may be admitted in cases made out by circumstantial evidence, if not inconsistent with the undisputed facts, for the additional light it may throw on the matter. *SKF Industries, Inc. v. Cody*, 2 Pa. Commonwealth Ct. 19, 276 A. 2d 356 (1971) ; *Giordano v.*

---

[1] The Chairman of the County Board was called as a witness for the Department but had nothing derogatory to say of Mr. Bleilevens' work.

*Ralph J. Bianco, Inc.,* 204 Pa. Superior Ct. 219, 203 A. 2d 396 (1964); *see A. P. Weaver & Sons v. Sanitary Water Board,* 3 Pa. Commonwealth Ct. 499, 284 A. 2d 515 (1971). The Civil Service Commission should be particularly astute to exclude hearsay where, as here, the state is attempting to remove a veteran employe from a well-paid position of great responsibility requiring difficult decisions on sensitive public matters. While we might rest our decision on this principle, we will nevertheless review the record, including testimony which should not have been admitted, to determine whether there is substantial support for the Commission's findings. We do so seriatim.

"9. Appellant used poor judgment in the handling of the homemaker's case."

The regional staff of the Department had recommended the dismissal of an employe who was alleged to have converted to her own use the sum of $36.00 entrusted to her by a welfare client for the payment of a bill owed by the client to another. The County Board heard the facts of the case and rather than dismissing the employe suspended her without pay and ordered her to make restitution of the $36.00. The Department's witnesses complaint seems to be that Mr. Bleilevens improperly resurrected the matter at a subsequent board meeting and that the Board then rescinded its order of restitution of the $36.00. The appellant's evidence, including the Board's minutes, showed that it was the employe's supervisor who requested that the Board reconsider the order of restitution because he was satisfied that the employe had not in fact embezzled the client's money. It was not Mr. Bleilevens but the County Board which refused to accept the Region's recommendation of dismissal; it was not Mr. Bleilevens who resurrected the matter, but the employe through her supervisor; and the record strongly indicates that

the employe had not misappropriated the client's money. If substantial justice was achieved in this matter, as appears to be the case, it would seem that good judgment had been employed to obtain that result.

"10. Appellant used his own method of personnel procedure rather than one proposed by the Department."

We are unable to discern with certainty the facts in the record upon which this finding was based. Ms. Britton who, we repeat, had no personal knowledge in the matter, testified that Mr. Bleilevens insisted that personnel actions be discussed in open meetings, "thus frequently exposing information of a confidential nature to the public and the other staff." Ms. Emery, on the same subject, complained not that Mr. Bleilevens discussed personnel matters in public meetings but that he did so in staff conferences which included persons whom she believed were not concerned with the subjects under discussion. It is apparent that Ms. Britton was retelling inaccurately what Ms. Emery had apparently learned from others. In any case, this matter concerned administrative procedures and there is no evidence that the appellant violated any rule or regulation of the Department or any order of a superior officer.

"11. Appellant did not follow policy outlined by the Affirmative Action Program."

We find nothing factual in the record to substantiate this finding. The Affirmative Action Program is a name given to a statement of policy by the Governor providing, as we understand it,[2] that members of minori-

---

[2] The appellant's supervisors seem to interpret the Affirmative Action Program to require that the persons whom it is meant to protect against discrimination should be given preference in promotion in public employment. Such an interpretation would be contrary to law and contrary to the Program's terms, at least as the

8

ty groups or disadvantaged persons should be given fair and full consideration for hiring and promotion in state service. It is true that Mr. Bleilevens on one occasion recommended, and his Board approved, the promotion of an employe not a member of a minority race when a person of this description was available; that the Human Relations Commission, after complaint, ordered the promotion of the complainant; and that Mr. Bleilevens recommended that the Board appeal the case to the courts. It is also true that on another occasion Mr. Bleilevens recommended a man instead of a woman for a promotion and that a complaint has been filed by the woman with the Human Relations Commission where it is pending. There is not the slightest suggestion that Mr. Bleilevens in either case was motivated by racial or sexual prejudice. It was Mr. Bleilevens' duty to recommend those persons for promotion who in his judgment were best qualified and, pursuant to the Affirmative Action Program, to explain why available persons in the so-called disadvantaged category were not recommended. In one of the instances mentioned we find in the record the Affirmative Action Certificate provided by Mr. Bleilevens. The form provided by the State requires a statement of the reasons why the so-called disadvantaged candidate was not chosen. Mr. Bleilevens set forth these reasons with regard to the candidate in question. The Department's brief implies that Mr. Bleilevens' statement demonstrates hostility to the Affirmative Action Program. The statement is strong, but it is one related to the candidate's functioning on the job, and there is no evidence that Mr. Bleilevens did not believe his comments to be true or that they were in fact motivated by prejudice. Where the state, in pursuance of a program to promote fairness, requires a supervisor to state why a

___

latter were expressed in Department's directives contained in the record.

disadvantaged person is not promoted, a department of state government is in poor stead to charge the reporter with subverting state policy by reporting unfavorably on the subject's work.

The appellant's evidence demonstrates that when he was acting as Executive Director and Administrator V of the County Board the percentage of his employes who were members of minorities was significantly higher than the percentage of persons who were members of minorities in Fayette County.

The Director of Social Programs also faulted Mr. Bleilevens because members of the Fayette County staff prepared and circulated publicly a petition critical of the Department of Welfare's so-called sensitivity training sessions for employes. Although the record does not indicate either that the appellant joined in the petition or had any part in its circulation, Mr. Bleilevens' superiors would hold him responsible. Possibly in deference to the holding of *Chalk Appeal,* 441 Pa. 376, 272 A. 2d 457 (1971), the Department contends that it did not object to the petition but the failure of its authors to "submit his [sic] objections through channels." *Chalk* held not only that the public employe may criticize, but that he may not be removed by reason of assumed, but not proved, detriment to the service caused thereby. There is no evidence that the petition or its circulation caused the slightest harm to the Department or its sensitivity program.

"12. Appellant opposed regional recommendations regarding transportation allotments."

This finding refers to Mr. Bleilevens' refusal to pay from funds entrusted to his Board the transportation expenses of a welfare recipient, a college graduate resident in Fayette County attending graduate school in Pittsburgh. Mr. Bleilevens and an assistant in his office consulted the regulations of the Pennsylvania De-

partment of Labor and Industry which, with the Department of Welfare, was involved in the so-called WIN program, under which the Department had advised the Fayette Board that the payment was authorized. They concluded that the payment was not proper. Mr. Bleilevens requested through channels that his Board be given written authority to make the payments. He received no written response for four months. Despite the fact that the letter eventually received justified the payment, not by reference to the regulations, but on the grounds of practice in other cases, the payments were thereupon made. We learned at argument that Mr. Bleilevens and his assistant were right and the Department wrong as to this client's entitlement to these payments. We cannot agree that it was insubordinate of Mr. Bleilevens to question the orders of the Department and to request its written authorization and justification for the action being demanded of his Board. The delay thereafter was caused not by Mr. Bleilevens' intransigence but by the Department's failure to respond to his request.

"13. Appellant became involved in an automobile accident involving an employe and a bank official."

This finding refers to an incident not related to his employment in which Mr. Bleilevens acted entirely properly and which the Department's counsel conceded at argument was no cause for removal.

"14. Appellant was insubordinate when he tried to fill a position by transfer when he had been specifically informed to fill no vacancies in that category."

The personnel office of the Department had advised Mr. Bleilevens that the ratio of caseworkers to assistant technicians of Fayette County office was too high and that as positions became vacant they should be filled with persons to be designated assistant techni-

cians. A young lady formerly resident in Fayette County had taken a position with the Department in Philadelphia because she could not get a job in Fayette County. She applied for an opening in Fayette County and was interviewed on the assumption that she would be transferred as an assistant technician, a position for which she was certified. At the interview it was ascertained that she had been working in Philadelphia as a caseworker trainee and Mr. Bleilevens recommended her employment in this category. He justified this on the ground of fairness to the young lady and on his belief that the Department's directive could be interpreted as inapplicable to a transfer of personnel from another County office to Fayette County. The Regional office did not agree with Mr. Bleilevens' interpretation of its directive and the young lady was not accommodated. We cannot agree that this incident either alone or taken with the Department's other complaints demonstrate that the appellant was insubordinate.

"Appellant promoted persons without notifying the Board of all the candidates' qualifications."

We have searched the record in vain for any evidence supporting this finding.

"The Commission accepts the appointing authority's evidence that appellant had change sheets and Affirmative Action forms approved before the Board took action on the appointment."

This finding is factual but highly disingenuous. It relates to the incident of the promotion by the Board of a male, instead of a female, staff member. Three candidates for the promotion had been placed before the Board for its consideration, two men and one woman, and one of the men was recommended by Mr. Blei-

levens. At the urging of a recently appointed woman member of the Board, who was also a member of an advisory committee to the Department on the Affirmative Action Program and who obviously favored the promotion of the woman candidate, a committee of the Board was formed to consider all three candidates. This committee recommended the promotion of the candidate recommended by Mr. Bleilevens. It was at this point and in anticipation of an early Board meeting that Mr. Bleilevens ordered the preparation and forwarding to the Department of the change sheet and Affirmative Action Certificate. There is no evidence that the appellant indulged in this activity as a course of conduct, nor is any rule or regulation referred to which renders it, in these or any other circumstances, irregular.

"The appellant acted contrary to the wishes of his Board in the Davis case."

This finding is factually inaccurate. In January 1971 the Fayette County Board promoted a Mr. Davis to a vacancy. It was then ascertained that the terms of some of the assumed members who acted at that meeting had expired. A new meeting was held with the vacancies filled by properly qualified persons and that Board promoted someone other than Mr. Davis. One of the Department's witnesses, testifying as to hearsay, stated that Mr. Bleilevens at the second meeting recommended the person promoted at that time. Hence, the only action Mr. Bleilevens is shown to have taken in this entire matter was to recommend to the properly constituted Board the promotion of someone other than a person chosen by the improperly constituted Board. He was surely not required to carry out the wishes of an illegally constituted Board or to refrain from performing his duty to make recommendations to the lawful body.

"Appellant does not have the confidence of the present Board."

Of course, if the appointing authority's lack of confidence is a cause for removal, the civil service system affords no protection whatsoever. This unfortunate finding provides, however, the occasion to remark that the Fayette County Board, only two months before the meeting at which the Deputy Secretary of Welfare for the Western Region and the Regional Director of Social Programs insisted on Mr. Bleilevens' removal, rated its Executive Director as excellent in work habits, very good in a number of other factors and good in implementing the Affirmative Action Program. This and the Chairman's testimony plainly indicates that Mr. Bleilevens' difficulties were not with his Board but with some officials of the Department of Welfare. This is pointed up sharply by the incident of the Department's order that the Fayette County Board pay the transportation expenses of a graduate school student. The Department contends that it was insubordinate of the appellant not to comply with its informal order to make the payments and that it is irrelevant that Mr. Bleilevens' action was based upon a pertinent ruling of another competent department of state government forbidding such a payment. Recent events at the highest level of government establish that the public is ill-served by employes who execute the will of their superior officers in disregard of their duties as prescribed by law. Further, it is the *County Board's* function to "Administer public assistance in the County, and determine the eligibility for assistance of applicants and continued eligibility for assistance of persons receiving the same in accordance with law and the rules, regulations and standards established by the department." Act of June 13, 1967, P. L. 31, Art. 14, §419, 62 P.S. §419.

## ORDER

And now, this 7th day of November 1973, the order of the Civil Service Commission dated March 15, 1973 is set aside and the appellant, Joseph J. Bleilevens, is ordered reinstated to his position as Administrator V, regular status, with the Department of Welfare as of December 21, 1972, the effective date of his removal.