Joseph C. Mawn, Appellant, *v.* Commonwealth of Pennsylvania, State Civil Service Commission, Appellee.

Argued December 5, 1974, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three.

*Howard M. Spizer,* with him *Munley & Munley,* for appellant.

*Barnet Lieberman,* Assistant Attorney General, for appellee.

OPINION BY JUDGE ROGERS, January 10, 1975:

This is the appeal of Joseph C. Mawn from an order of the State Civil Service Commission dismissing his appeal from the action of the Commission changing a certification of his eligibility for promotion from the position of Caseworker II to Public Welfare Administrator V in the Department of Welfare.

We reverse the Commission's order and remand the record for a full, fair and impartially conducted hearing at which the appellant shall be afforded the opportunity, improperly denied him at the previous hearing, to develop his case.

It is Mr. Mawn's contention that the Commission's action in changing its certification was the result of anti-union bias on the part of officials of the Department of Welfare, particularly of a Mrs. Catherine McKenna, Acting Regional Deputy Secretary for the Northeastern Pennsylvania Region, acting in concert with members of the staff of the State Civil Service Commission. The facts which the appellant was able to adduce are strange, highly suspicious and demand a full exposition of the matter which erroneous rulings of the Commission at the hearing precluded.

Mr. Mawn aspired to the position of director of the Lackawanna County Board of Assistance which must be filled by a person qualified by standards of the Department of Welfare, applied by the State Civil Service Com-

mission, as a Public Welfare Administrator V. *See Blei-levens v. Pennsylvania State Civil Service Commission,* 11 Pa. Commonwealth Ct. 1, 312 A.2d 109 (1973). Mr. Mawn had been employed in the office of the Lackawanna County Board of Assistance for 20 years, most recently as a Caseworker II, in which last position, he asserts, fifty percent of his time was spent in administrative duties. He possesses baccalaureate and graduate degrees and has considerable administrative experience in public and private endeavors, including the presidency of a union for a number of years.

The job description of Public Welfare Administrator V, Department of Welfare, includes the following pertinent requirement.

"Minimum Experience and Training: Six years of progressively responsible experience in the field of human services, including three years in an administrative capacity, two years of which must have been in a public welfare agency; and a bachelor's degree; *or any equivalent combination of experience and training.*" (Emphasis supplied.)

Mr. Mawn applied for the Administrator V position with the County Board in April 1973, but he and a number of other applicants were found by the Commission not to be qualified. For reasons not necessary to explain, the position again became vacant on or about June 1, 1973. On June 4, 1973, Mr. Mawn presented a fuller application for certification to the State Civil Service Commission personally at its office in Harrisburg. He there met with the Executor Director of the Commission and the chief evaluator, presented orally further information concerning his administrative experience and received from the Commission an executive eligibility form which stated "[a]pplicant has the minimum experience and training required for this class [Public Welfare Administrator V] based upon 12 years union president experience given one-quarter credit = three years." Mr. Mawn was in-

structed by the Executive Director to deliver this form to the Lackawanna County Board of Assistance and to tell that Board "to send in your name, and you will be certified for the job." Mr. Mawn did as he was instructed and the County Board elected him to the position of director on June 11, 1973. On June 12, 1973, Mr. Mawn went to his place of employment prepared to take up his new duties. He was met there by Mrs. McKenna who, he testified, prevented him from occupying his office and pursuing his new employment. Later the same day Mr. Mawn had a further conversation with Mrs. McKenna. Some days still later Mrs. McKenna and personnel officers of the Department of Welfare met with staff members of the State Civil Service Commission and discussed Mr. Mawn's application. Mr. Mawn was given no notice of this meeting and was not present.

On or about July 29, 1973 Mr. Mawn obtained *from Mrs. McKenna* a copy of the certification of eligibility which he received from the Commission and delivered to the Lackawanna County Board of Assistance on June 4, 1973, on which, in handwriting other than that appearing on the form provided him, was the following additional inscription:

"candidate will have to provide substantial detail on this and claimed community social services activities on application if and when officially submitted for personnel action."

There is testimony in the record that the Executive Director of the State Civil Service Commission later stated that these words were added to the certification by someone in the Department of Welfare. The Executive Director denied making this statement but no information was provided by the Commission as to the identity of the author of the additional wording.

Mr. Mawn's counsel sought to interrogate his client as to what Mrs. McKenna said on July 12, 1973, but objections by counsel of the State Civil Service Commission

were sustained. Counsel for Mr. Mawn made a formal offer to prove that Mrs. McKenna on that occasion questioned Mr. Mawn concerning his union activities, asked the number of people in the union with which he was affiliated, wanted to know whether he intended to continue in his union responsibilities, and told Mr. Mawn that if he wanted to get any promotion at all he had better divorce himself of his union affiliations. The offer of proof was refused upon the Commission's counsel's objection. The objections to the testimony and to the offer were, first that they sought to elicit hearsay and second, that Mrs. McKenna's statements were irrelevant because the appeal was from the action of the State Civil Service Commission in changing the evaluation and not from any action of the Department of Welfare.[1] Of course, a person's account of what another told him, offered to prove the teller's motives and state of mind where they are in issue, is not hearsay. Further, the Commission's view that Mrs. McKenna's motives in blocking Mr. Mawn's promotion were irrelevant was an unduly restrictive view of the proceedings before it. Section 905.1 of the Civil Service Act, Act of August 5, 1941, P.L. 752, added by Act of August 27, 1963, P.L. 1257, §25, 71 P.S. §741.905(a), provides:

> "*No officer* or employe *of the Commonwealth* shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention or any other personnel action with respect to the classified service because of political or religious opinions of affiliations because of labor union affiliations or because of race, national origin or other non-merit factors." (Emphasis supplied.)

---

1. That the Department of Welfare was not unaware of the involvement of its people is demonstrated by the presence at the hearing of a member of its legal staff who offered for examination by appellant certain Department employes, notably not including Mrs. McKenna.

If Mrs. McKenna's intervention was the cause of the Commission's reversal of its position as to Mr. Mawn's qualifications, and if that intervention was motivated by anti-union bias, he was discriminated against in appointment and promotion by an officer of the Commonwealth. Since other evidence, including Mrs. McKenna's unusual activities on June 12, 1973, the fact that she later had in her possession a copy of Mr. Mawn's eligibility certificate issued by the Commission and, as we understand, his original application filed with the Commission, and that she arranged and attended a meeting with State Civil Service Commission staff members, her statements to the appellant concerning his application were clearly relevant to an inquiry into the Commission's action. We further observe that the Civil Service Act is remedial legislation designed to protect public employes in employment and promotion. It and the procedures in implementation of it are to be liberally construed and followed to achieve that end. To examine the form filed on appeal in the manner of an eighteenth century chancellor considering common law pleadings is inconsonant with the legislation and with the administrative process generally.

Finally, at the hearing below certain members of the Commission exhibited an unseemly truculence and improper impatience with the appellant's counsel's efforts to present his case. We are fully aware of the Commission's burdensome caseload and of the undesirability of repetitious questioning. However, fundamental fairness requires that counsel for employes contending that they have been the subjects of discrimination, an activity always difficult to prove, should be given wide latitude in cross-examination. Since it is not to be expected that employers will admit to unlawful bias, cases of this kind must more often than not rest on inferences drawn from acts and the credibility of the explanations assertedly justifying them.

ORDER

AND NOW, this 10th day of January, 1975, the order of the State Civil Service Commission is set aside and the record remanded for a new hearing consistent with this opinion.