613 A.2d 122

**Luigi A. SACCOL, Petitioner,**

v.

**MUNICIPAL POLICE OFFICERS' EDUCATION
& TRAINING COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 12, 1992.

Decided July 21, 1992.

Lisa L. Lazzari, for petitioner.

Joanna N. Reynolds, for respondent.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

PALLADINO, Judge.

Luigi A. Saccol (Saccol) appeals a final determination of the Municipal Police Officers' Education and Training Commission (Commission) which ordered the revocation of Saccol's certification as a municipal police officer. We affirm.

The facts of this case, as found by the hearing examiner, are that since 1975, Saccol has been employed as a police officer by Richland Township, Cambria County. On November 6, 1987, a jury found Saccol guilty of violating the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701–5781.[1] After Saccol filed post-trial motions and was granted a new trial, the Commonwealth appealed to the Superior Court, which reversed the granting of the new trial and remanded for sentencing. On August 3, 1989, the trial court sentenced

---

1. Saccol owned a dry cleaning business which he operated in addition to his full time employment as a police officer. To check on a female employee, he installed a recording device on the business telephone and, as a result, was convicted on two counts of unlawful interception and disclosure.

Saccol to six months probation on each of the two felony counts.

At the time of Saccol's conviction, he was certified as a municipal police officer under the act creating the Municipal Police Officers' Education and Training Commission, Act of June 18, 1974, P.L. 359, *as amended,* 53 P.S. §§ 740–749 (Act). The Commission, after receiving notice of the conviction, instituted certification revocation proceedings against Saccol pursuant to the Act. A hearing was held before a hearing examiner on May 8, 1990. In his report, the hearing examiner recommended that Saccol's certification should not be revoked.

The Act, when first passed on June 18, 1974, did not contain any authority for the Commission to revoke certifications previously granted to municipal police officers. The Act was subsequently amended on December 21, 1988. As amended, the Act provides:

The powers and duties of the commission shall be as follows:

(1) To establish and administer the minimum courses of study for basic and in-service training for municipal police officers and to revoke an officer's certification for failure to comply with the basic and in-service training requirements or in cases where an officer is convicted of a criminal offense or the commission determines that the officer is physically or mentally unfit to perform the duties of his office.

Subsection 5(1) of the Act, 53 P.S. § 744(1).

The Commission issued a final determination which revoked the certification of Saccol.

Saccol appeals[2] and presents two issues: (1) whether the word "convicted" as used in subsection 744(1) means the

2. Because this is an appeal from an adjudication (i.e., the Commission's "final determination"; *see* section 5 of the Act of April 28, 1978, P.L. 202, No. 53, 2 Pa.C.S. § 101, **"Adjudication."** definition) of a Commonwealth agency (i.e., the Commission; *id.,* at **"Commonwealth agency."** definition), our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

occurrence of the stage of prosecution where the issue of guilt is determined in a criminal proceeding, and whether retroactive application of the 1988 amendment to the Act is permissible; and (2) whether refusing to grant a hearing after an adverse ruling pursuant to Title 37, Chapter 201, Section 201.26 of the Pennsylvania Code violates due process.[3]

## 1.

As to the first issue, Saccol argues that he was convicted on November 6, 1987 when the jury returned its guilty verdict. At that time, the Commission had no authority to revoke certifications. The amendment which granted the authority to the Commission to revoke certifications was not passed until after Saccol was found guilty by a jury. Therefore, he argues that the amendment cannot be applied to his case because it would constitute impermissible retroactivity.

The Commission argues that Saccol was convicted on the date that his sentencing occurred, i.e., August 3, 1989, and that because the Commission was empowered to revoke as of that date, its revocation was not retroactive.

We must therefore decide whether the word "convicted" in subsection 744(1) means the return of a verdict of guilty or the return of such a verdict accompanied by sentencing.

*Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984), is dispositive. In that case, our supreme court reiterated the long-standing principle (*see Commonwealth ex rel. McClenachan v. Reading,* 336 Pa. 165, 6 A.2d 776 (1939)) that in interpreting a statute using the word "conviction," [4] the strict legal meaning of that word must be applied except

---

**3.** Saccol's brief also argues that his right to due process was violated because the Commission did not disclose to him an adjudication recommendation of the Commission's general counsel. However, at oral argument, counsel stipulated that this issue had become moot.

**4.** Both parties address *Travaglia* in their respective briefs, but neither argues that there is any difference between the word "conviction" (construed in *Travaglia*) and the word "convicted" (as used in subsection 744(1)). Nor do we perceive any difference.

where the intention of the legislature is obviously to the contrary. The court further stated that, "this 'strict legal meaning', requires a verdict *accompanied by sentence....*" *Travaglia,* 502 Pa. at 496, 467 A.2d at 299 (emphasis added).

We are therefore bound by this meaning, unless the intention of the legislature when amending the Act was "obviously to the contrary." Saccol argues it was "obviously to the contrary" because in enacting the amendment, the legislature did not condition the Commission's power to revoke on the type, range or magnitude of sentence imposed. However, just because the legislature did not specify a particular class of sentences that would trigger the Commission's power to revoke does not mean the legislature "obviously" intended a definition of "convicted" that did not include, as one of its elements, sentencing. Put more directly, that the legislature said nothing regarding sentencing does not mean it intended to exclude sentencing as part of the strict legal meaning of "convicted." One does not follow from the other.

Saccol's argument on this issue must therefore be rejected. Because, for purposes of subsection 744(1), to be "convicted" requires a guilty verdict accompanied by a sentence, Saccol was not "convicted" until August 3, 1989, after enactment of the amendment to the Act granting the Commission the power to revoke Saccol's certification for conviction of a criminal offense. The Commission's revocation was therefore not retroactive.[5]

## 2.

With respect to the issue of a post-revocation hearing, Saccol relies on a regulation promulgated by the Commission which states that "[i]n all cases where the Commission ... revokes any previously issued certification ... [t]he individual may file a written request for a hearing." 37 Pa.Code § 201.-

---

5. Much of the oral argument before this court focused on whether subsection 744(1) constituted a retroactive *ex post facto* law. We need not address this issue because the meaning of the word "convicted" established by our supreme court makes the question irrelevant in this case.

26.  Saccol argues that the rejection of his timely application for a hearing on his adverse determination was in violation of the regulations and constituted a violation of his right to due process.

Our supreme court has stated that the root requirement of procedural due process is that, except in extraordinary situations, an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest. *Pennsylvania Coal Mining Association v. Insurance Department*, 471 Pa. 437, 370 A.2d 685 (1977).

Saccol's argument that the Commission violated due process by not providing him a post-revocation hearing flies in the face of the fact that he received a hearing prior to the revocation. Saccol has not alleged, and we cannot conclude, that Saccol was harmed in any way because the Commission conducted a pre-revocation hearing instead of a post-revocation hearing. Section 201.26 does not require two hearings.

Accordingly, we affirm the Commission's adjudication.

ORDER

AND NOW, July 21, 1992, the adjudication of the Municipal Police Officers' Education and Training Commission in the above-captioned matter is affirmed.