**Paul F. DiSALVATORE, Petitioner,**

v.

**MUNICIPAL POLICE OFFICERS' EDUCATION & TRAINING COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 10, 2000.

Decided May 23, 2000.

---

**310**

Before FRIEDMAN, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Paul F. DiSalvatore petitions for review of the July 1, 1999 order of the Municipal Police Officers' Education and Training Commission (Commission)[1] that adopted Hearing Examiner John M. Shugars' decision denying DiSalvatore certification and revoking his approval to attend police recruit training with the Philadelphia Police Department due to his April 8, 1992 conviction of aggravated assault under the Uniform Code of Military Justice (UCMJ).[2] The key issue before us is whether the Commission erred in determining that DiSalvatore's conviction constituted a "disqualifying criminal offense" such that he is precluded from becoming a municipal police officer. A "disqualifying criminal offense" is defined as "[a] criminal offense for which more than 1 year in prison *can* be imposed as punishment"[3]. For the reasons that follow, we are compelled to affirm the Commission's order.

By way of background information, we note that under Section 2164 of the Municipal Police Officers' Education and Training Act (Act), the Commission has the

Anthony M. Caputo, Harrisburg, for petitioner.

Joanna N. Reynolds, Harrisburg, for respondent.

---

1. The General Assembly created the Commission in 1974. *See* Act of June 18, 1974, P.L. 359, *as amended*, 53 P.S. §§ 740–749. In 1996, those sections were repealed. The subject matter of those repealed sections is now found in the Municipal Police Officers' Education and Training Act, 53 Pa.C.S. §§ 2161–2171.

2. Pursuant to Section 928(b) of the UCMJ, aggravated assault is defined as follows:
  (b) Any person subject to this chapter who—
    (1) commits an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm;
    . . . .
  is guilty of aggravated assault and shall be punished as a court-martial may direct.
10 U.S.C. § 928(b). The Manual for Courts–Martial identifies the elements of the offense as follows:
  (4) Aggravated assault.
    (a) Assault with a dangerous weapon or other means of force likely to produce death or grievous bodily harm.
    (i) That the accused attempted to do, offered to do, or did bodily harm to a certain person;
    (ii) That the accused did so with a certain weapon, means, or force;
    (iii) That the attempt, offer, or bodily harm was done with unlawful force or violence, and
    (iv) That the weapon, means, or force was used in a manner likely to produce death or grievous bodily harm.
    (Note: when a loaded firearm was used, add the following element)
    (v) That the weapon was a loaded firearm.
  (Para.54b(4)(a)(i)–(iv), Part IV, Manual for Courts–Martial, United States, (1995); R.R. 104a.)

3. 37 Pa.Code § 203.1 (emphasis added).

responsibility of establishing and administering the initial training and certification of municipal police officers in the Commonwealth. 53 Pa.C.S. § 2164. Section 2167(a) of the Act provides that all municipalities must train all members of their police departments pursuant to the municipal police education and training subchapter *prior* to their enforcing criminal laws, moving traffic violations or being authorized to carry a firearm. 53 Pa.C.S. § 2167(a). In addition, persons who are employed as police officers by police departments within the Commonwealth must be free from convictions of disqualifying criminal offenses. 37 Pa.Code § 203.11.

The Commission's decision in the instant case was the result of its conclusion that DiSalvatore's military conviction constituted a "disqualifying criminal offense" for which it could deny or revoke DiSalvatore's certification because it was one for which greater than one year in prison could be imposed as punishment pursuant to 37 Pa.Code § 203.14(a)(6).[4] Thus, the effect of the Commission's decision and our affirmance thereof is that DiSalvatore cannot be employed as a municipal police officer in the Commonwealth. 53 Pa.C.S. § 2167(a).

On November 10, 1998, the hearing examiner conducted an administrative hearing on DiSalvatore's revocation of certification. Although DiSalvatore was present with counsel, only the Commission presented evidence. Via Mr. Robert Nardi, who works for the Pennsylvania State Police and is the manager responsible for the administration of the Municipal Police Officers Education and Training Program, the Commission submitted six exhibits into evidence. Those exhibits are as follows:

1) Eight-page document from the Department of the Navy, dated May 21, 1998 (a certified copy of the court-martial record);

2) Five-page document from the Department of the Navy, dated May 21, 1998 (a certified copy of a portion of the Manual for Courts–Martial);

3) Fax Transmittal from Lieutenant Colonel Naugle to Major Mooney, dated May 1, 1998 (handwritten note indicating that, despite references in the certified record to a special court martial, the court martial was general);

4) Letter from Lieutenant Colonel D.A. Anderson to: To Whom it May Concern, dated June 4, 1998 (letter from the military judge in DiSalvatore's court martial indicating that it was a general one and that DiSalvatore was an outstanding marine who merely demonstrated an error in judgment);

5) Letter from Major Mooney to Chief Inspector Orbell, dated July 28, 1998 (letter from Commission revoking DiSalvatore's approval to attend training and advising that certification will be denied); and

6) Letter from Major Mooney to DiSalvatore, dated October 6, 1998 (letter advising DiSalvatore that an administrative hearing had been scheduled).

(Commission's Exhibits Nos. 1–6; R.R. 94a–112a.)

DiSalvatore argued before the hearing examiner that his court-martial proceeding was special as opposed to general and that, therefore, the conviction did not constitute a disqualifying offense.[5] This is significant because, under the UCMJ, the maximum punishment for aggravated assault at a *general* court-martial proceeding is con-

---

4. That regulation provides as follows:

    (a) The Commission maintains the right to revoke certification after notice and an opportunity to be heard under Subchapter G (relating to notice and hearings) for one or more of the following:

    . . . .

    (6) Conviction for a disqualifying criminal offense.

37 Pa.Code § 203.14(a)(6).

5. Under the UCMJ, there are three types of court martials: summary, special and general. 10 U.S.C. § 816. General court martials are the most serious.

finement of greater than one year.[6] The jurisdiction of a *special* court-martial board is limited to imposing a maximum confinement of six months, without regard to the offense.[7]

Following the hearing, the hearing examiner issued a March 29, 1999 proposed decision and order, which the Commission adopted. The facts as found by the hearing examiner are as follows.

On April 8, 1992, a military judge in a court-martial proceeding tried DiSalvatore "under Charge I, Article 128, Specification 2, alleging that [he] did, at Fort A.P. Hill, Virginia, on or about 22 November 1991, commit an assault upon Lance Corporal Michael P. Duff, U.S. Marines Corps, by shooting [Duff] in the groin area with a means likely to produce death or grievous bodily harm, to wit: using a loaded 9mm pistol." (Finding of Fact No. 5.) The military judge found DiSalvatore guilty of aggravated assault. For that conviction, DiSalvatore received a sentence of four months of confinement with a reduction in pay grade to E–1. (Exhibit No. 2; R.R. 99a.)

On February 3, 1998, the Commission obtained criminal history information from the Federal Bureau of Investigation indicating that DiSalvatore had been prosecuted and convicted of the above offense.[8] Despite its receipt of that information, the Commission granted approval for DiSalvatore to attend police recruit training on March 16, 1998.

On July 28, 1998, the Commission notified the Philadelphia Police Department that the Commission had issued approval for DiSalvatore to attend police recruit training in error, that the Commission was revoking the approval as a result of his conviction for an offense that carries of maximum penalty of more than one year and that the Commission would not grant his municipal police certification. (Exhibit No. 5; R.R. 111a.) The rationale behind the revocation was as follows.

The hearing examiner found that it has been the Commission's established policy and practice "that a police officer certification is subject to revocation or that approval to attend police training will be denied when an officer is convicted of an offense punishable by more than one-year imprisonment." (Finding of Fact No. 9.) In addition, the hearing examiner noted that the Commission published amendments on December 21, 1996 specifically defining a "disqualifying offense" as a criminal offense for which more than one year in prison can be imposed as punishment. 37 Pa.Code § 203.1.

Accordingly, the hearing examiner determined that DiSalvatore was convicted of a disqualifying criminal offense in a general court-martial. The fact finder noted that, despite the leniency of the military judge, DiSalvatore faced up to a maximum of eight years confinement for his offense. In addition, the hearing examiner noted that written documentation from the military judge supports the fact that the conviction occurred in a general court-martial

---

6. Specifically, pursuant to Paragraph 54e(8)(a), Part IV, Manual for Courts–Martial, United States, (1995), the maximum punishment for aggravated assault is as follows:

(8) Assault with a dangerous weapon or other means of force to produce death or grievous bodily harm.
(a) When committed with a loaded firearm. Dishonorable discharge, forfeiture of all pay and allowances, and confinement for 8 years.
(R.R. 107a.).

7. 10 U.S.C. § 819.

8. Pursuant to Section 2164(7) of the Act, the Commission is empowered to require all police officers to undergo a background investigation to determine the individual's suitability for employment as a police officer. This investigation shall be completed prior to the employment of the officer and shall include a criminal history check, a credit check, personal interviews and any other applicable means of determining eligibility. An applicant who has been convicted of a felony or serious misdemeanor shall not be eligible for employment as a police officer.

53 Pa.C.S. § 2164(7).

proceeding. (Exhibits Nos. 1–4; R.R. 94a–112a.) Thus, the hearing examiner concluded that DiSalvatore was convicted of a "disqualifying criminal offense" for which his certification could be denied or revoked by the Commission pursuant to 37 Pa.Code § 203.14(a)(6).

In a July 1, 1999 decision, the Executive Director of the Commission adopted the hearing examiner's decision and officially advised DiSalvatore that his application for certification submitted by the Philadelphia Police Department on his behalf was denied. DiSalvatore's petition for review to this Court followed.

█ DiSalvatore presents three issues for our review: 1) whether the Commission erred as a matter of law in determining that DiSalvatore committed a disqualifying criminal offense: 2) whether the Commission erred in admitting and relying upon hearsay evidence; and 3) whether there is substantial evidence to support the finding that DiSalvatore committed a disqualifying criminal offense. On review, we are limited to determining whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are not supported by substantial evidence. *Saccol v. Municipal Police Officers' Educ. & Training Comm'n*, 149 Pa. Cmwlth. 343, 613 A.2d 122 (1992).

### I.

DiSalvatore argues that, as a matter of law, a conviction under the UCMJ does not constitute a disqualifying criminal offense within the meaning of the Act and its amendments. He notes that our United States Supreme Court has held that the UCMJ is not a criminal code. Specifically, in *Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), the Court held that military personnel facing summary court-martial proceedings were not entitled to Sixth Amendment representation of counsel. The *Middendorf* Court reasoned that

[w]e have only recently noted the difference between the diverse civilian community and the much more tightly regimented military community in *Parker v. Levy*, 417 U.S. 733, 749, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). We said there that the UCMJ "cannot be equated to a civilian criminal code. It, and the various versions of the Articles of War which have preceded it, regulate aspects of the conduct of members of the military which in the civilian sphere are left unregulated. While a civilian criminal code carves out a relatively small segment of potential conduct and declares it criminal, the [UCMJ] essays more varied regulation of a much larger segment of the activities of the more tightly knit military community." *Ibid.* Much of the conduct proscribed by the military is not "criminal" conduct in the civilian sense of the word. *Id.,* at 749–751, 94 S.Ct. 2547.

*Middendorf,* 425 U.S. at 38, 96 S.Ct. 1281.

In addition, DiSalvatore points out that there are many "military" crimes for which there are no civilian equivalents, such as desertion and disobeying a general order or regulation, and that, therefore, what is proscribed by the military is not necessarily criminal conduct in the civilian sense of the word. Thus, he argues that, as a matter of law, the Commission erred in concluding that a conviction at a court-martial proceeding convened pursuant to the UCMJ constitutes a disqualifying criminal offense.

The Commission alleges that *Middendorf* is inapposite to the case at bar because the Supreme Court was faced with the issue of whether military personnel facing summary court-martial proceedings were entitled to representation of counsel under the Sixth Amendment. The Commission points out that DiSalvatore faced a general court martial on an assault charge, which has a civilian counterpart in the Commonwealth's Crimes Code.[9]

9. 18 Pa.C.S. §§ 101–9183.

Additionally, the Commission points out that several Courts of Appeals have held that court-martial convictions are criminal convictions for purposes of applying civilian disabilities. In *United States v. MacDonald*, 992 F.2d 967 (9th Cir.1993), the Ninth Circuit Court held that an army court martial was a "crime" within the meaning of the federal firearm provision prohibiting possession of a firearm by any person convicted in any court of a crime punishable by imprisonment for a term exceeding one year. In *United States v. Martinez*, 122 F.3d 421 (7th Cir.1997), the Seventh Circuit Court held that a defendant's court martial conviction for "housebreaking" was a conviction for "burglary" under the federal Armed Career Criminal Act of 1984.[10] *See also Brown v. United States*, 508 F.2d 618 (3rd Cir.), *cert. denied*, 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975) (Third Circuit referred to special court-martial convictions as "criminal convictions.")

■ We agree with the Commission that merely because DiSalvatore's conviction occurred under the UCMJ that does not mean that the conviction cannot meet the criteria for being a disqualifying criminal offense within the meaning of the Act and its amendments. Although we acknowledge the general language in *Middendorf* regarding the difference between civilian criminal codes and the UCMJ, we note that the crime of aggravated assault has an equivalent in our state Crimes Code.[11] Thus, we reject DiSalvatore's attempt to decriminalize his aggravated assault conviction merely because the offense occurred in a military setting and conclude

that his conviction in a court-martial proceeding does not preclude the offense from being a "disqualifying criminal offense." [12] We turn now to the issue of whether the Commission erred in admitting and relying upon hearsay evidence.

## II.

DiSalvatore acknowledges that his proceeding was conducted under the auspices of the Administrative Agency Law and that as such, strict compliance with the Pennsylvania Rules of Evidence was not necessary. Section 505 of the Administrative Agency Law, 2 Pa.C.S. § 505. He notes, however, that "hearsay evidence, properly objected to, is not competent to support a finding in an administrative hearing." *Anderson v. Department of Public Welfare*, 79 Pa.Cmwlth. 182, 468 A.2d 1167, 1169 (1983). Once objected to, the general rule is that it is to be excluded. *Id.*

DiSalvatore points out that during the hearing, his counsel objected to Commission Exhibits Nos. 1, 3 and 4. Exhibit No. 1 is a certified record of the court-martial (R.R. 94–102a), Exhibit No. 3 is a fax transmittal with a handwritten note indicating that, despite references in the certified court-martial record to a special court-martial, DiSalvatore's court-martial was general (R.R. 109a), and Exhibit No. 4 is a letter from the military judge indicating that DiSalvatore's court martial was general (R.R. 110a). As DiSalvatore's counsel objected to the above-referenced exhibits and alleged that the Commission presented them for the truth of the matter assert-

---

**10.** 18 U.S.C. § 924(e).

**11.** In pertinent part, the aggravated assault section provides as follows:

(a) Offense Defined.—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life....

. . . .

(b) Grading.—Aggravated assault under subsection (a)(1) ... is a felony of the first degree....

Section 2702(a)(1) and (b) of the Crimes Code, 18 Pa.C.S. § 2702(a)(1) and (b).

**12.** We need not, and do not, however, reach the issue of whether a court-martial conviction for an offense *without* a civilian counterpart can constitute a disqualifying criminal offense under the Act. That issue is not before us.

ed,[13] DiSalvatore argues that they do not constitute competent evidence to support a finding that the court martial was a general one.

In addition, DiSalvatore points out that this Court in *Bleilevens v. State Civil Service Commission*, 11 Pa.Cmwlth. 1, 312 A.2d 109, 111 (1973) held that in circumstances involving the deprivation of employment, "the hearsay rule is not a technical rule of evidence but a basic, vital and fundamental rule of law which ought to be followed by administrative agencies at those points in their hearings when facts crucial to the issue are sought to be placed in the record." DiSalvatore argues that, at a minimum, Exhibits Nos. 3 and 4 should be excluded because facts crucial to the issue of whether his court martial was general or specific were placed into the record via those hearsay documents.

Further, he contends that because Exhibits Nos. 2, 5 and 6 were not probative of the issue before the Commission, excluding Exhibits Nos. 3 and 4 would leave only Exhibit No. 1, the certified record of the court-martial, as determinative of whether he committed a disqualifying criminal offense. In the third portion of this opinion, we consider DiSalvatore's argument as to why he believes that Exhibit No. 1 cannot support the Commission's finding that his court martial was general.

With regard to the hearsay argument, the Commission contends that, although the hearing examiner referred to Exhibits Nos. 3 and 4 as supportive of the proposition that DiSalvatore's conviction occurred in a general court martial, the hearing examiner did not rely exclusively on those exhibits. The Commission points out that the hearing examiner also cited Exhibit No. 1, a certified record of the court martial, in support of his decision. It alleges that any references to a "special" court

martial in that document are clearly typographical errors and that we should pay close attention to that part of the exhibit where the Commanding General convened the court martial as a general one as probative of the fact that the court martial was general. (Exhibit No. 1; R.R. 95a.)

In addition, the Commission argues that the reference to hearsay documents does not taint the result in this case. It points out that the holding in *Bleilevens* is not that hearsay evidence must be excluded, just that it may be admitted to shed additional light on a matter. It emphasizes that the primary evidence in this case was not hearsay, but instead, the certified record of DiSalvatore's court martial.

Finally, the Commission contends that, regardless of what the hearing officer relied upon to reach its conclusion that the court martial in this case was general, the fact remains that DiSalvatore *could* have been punished up to eight years for his crime. This is regardless of what type of court martial actually occurred. We will address this argument in the third portion of this opinion.

■ With regard to the hearsay issue, we agree with DiSalvatore that, because his counsel properly objected to Exhibits Nos. 3 and 4, they are not competent, in and of themselves, to support a finding of fact that the court martial was general. *See Walker v. Unemployment Compensation Board of Review*, 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976) (holding that a finding of fact based solely on hearsay cannot stand). We note, however, that the hearing examiner cited Exhibits Nos. 1 *through* 4 as supportive of his decision that the court martial was general.[14] Thus, he did not rely solely upon Exhibits Nos. 3 and 4 to support his determination that the court martial was general.

---

13. (November 10, 1998 Hearing, N.T. 29, 31, 36, 42; R.R. 30a, 32a, 37a, 43a.)

14. " '[W]ritten documentation from the trial judge supports that [DiSalvatore's] conviction

occurred in a General court-martial proceeding.' (Commission Ex. 1–4)." (Hearing Examiner's March 29, 1999 Decision at 6; R.R. 118a.)

In any event, we are compelled to emphasize that the hearing examiner did not primarily base his decision on a determination as to whether the court martial was general or specific. Instead, he emphasized the potential punishment for the crime and stated as follows:

> [T]he Commission met its burden and satisfied this Hearing Officer that [DiSalvatore] was convicted of a disqualifying criminal offense in a military General court-martial. Despite the leniency of the Judge and his written praise on behalf of [DiSalvatore], [he] potentially faced up to a maximum of eight years confinement for assault with a dangerous weapon or other means of force to produce death or grievous bodily harm.

(Hearing Examiner's March 29, 1999 Decision at 6; R.R. 118a.) Thus, the hearing examiner found more significance in the fact that the potential punishment for aggravated assault was eight years of imprisonment, not that the court martial was general or specific. This analysis is intertwined with our final issue, which is whether there is substantial evidence to support the finding that DiSalvatore committed a disqualifying criminal offense. We turn now to that issue.

### III.

DiSalvatore argues that there is no substantial evidence to support a finding that there was disqualifying criminal conduct because the Commission produced only one witness and that witness did not have any particularized knowledge germane to the issue. Further, he points out that Exhibit No. 1, the certified record of the court martial, contains references to the proceeding being both general and specific. (3 times special, 6 times general) Thus, he argues that the Commission failed to establish that the proceeding was general.

The Commission argues that it is clear that the proceeding was general. In the alternative, it contends that it does not matter whether the proceeding was general or specific because that would not change the nature of the offense. In other words, aggravated assault would still be an offense punishable by up to eight years of imprisonment, even though a special court-martial board would have been limited to imposing a maximum punishment of six months. 10 U.S.C. § 819.

Notwithstanding the fact that the certified record of the court martial contains references to both general and special, we conclude that the offense for which DiSalvatore was convicted is key in this case. Specifically, the charge was Article 128, assault, and the specification was that DiSalvatore had committed an assault upon Lance Corporal Duff by shooting him in the groin area with a means likely to produce death or grievous bodily harm, to wit: a loaded 9mm pistol. (Exhibit No. 1; R.R. 99a.) Pursuant to the Manual for Courts–Martial, the maximum punishment for aggravated assault is dishonorable discharge, forfeiture of all pay and allowances and confinement for eight years. (Para.54e(8)(a), Part IV, Manual for Courts–Martial, United States, (1995); R.R. 107a.)

■ In addition, despite the fact that the military judge was lenient in DiSalvatore's court martial and imposed a sentence of only four months confinement and a reduction to pay grade E–1, we conclude that his conviction, as a matter of law, constitutes a disqualifying criminal offense. Simply, the conviction was for a criminal offense for which more than one year in prison *could* be imposed as punishment under 37 Pa.Code § 203.1. *See* Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b) ("[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Our inquiry must end here, as our appellate role in this matter does not permit us to indulge in an examination of any mitigating factors.

Accordingly, for the above reasons, we are compelled to affirm the Commission's order.

### O R D E R

AND NOW, this 23 rd day of May, 2000, the July 1, 1999 order of the Municipal Police Officers' Education and Training Commission denying Paul F. DiSalvatore's certification and revoking his approval to attend police recruit training with the Philadelphia Police Department is hereby affirmed.

FRIEDMAN, Judge, dissenting.

The Municipal Police Officers' Education and Training Commission (Commission) revoked Paul F. DiSalvatore's certification as a municipal police officer pursuant to 37 Pa.Code § 203.14(a)(6), which states that the Commission may revoke a certification where the officer has been convicted of a "disqualifying criminal offense." The regulation at 37 Pa.Code § 203.1 defines a "disqualifying criminal offense" as a criminal offense for which more than one year in prison "can be imposed as punishment." I do not agree with the majority that, as a matter of law, "the conviction [of DiSalvatore] was for a criminal offense for which more than one year in prison *could* be imposed as punishment under 37 Pa.Code § 203.1." (Majority op. at 316.) Therefore, I respectfully dissent.

Because this case arises out of the system of military justice, which involves different kinds of courts-martial with varying degrees of authority, I believe the ques-

tion presented under 37 Pa.Code § 203.1 in this case is whether more than one year in prison could have been imposed as punishment **by the court with jurisdiction over the matter.**[1] There are three kinds of courts-martial in the armed forces: (1) general courts-martial; (2) special courts-martial; and (3) summary courts-martial. 10 U.S.C. § 816. The two that concern us here are the general and the special courts-martial. For the most part, general courts-martial have authority to impose any punishment, including the death penalty. 10 U.S.C. § 818. Special courts-martial, on the other hand, may impose punishment, but may *not* impose as punishment confinement for more than six months. *10 U.S.C. § 819 (1998)*. Thus, DiSalvatore could have received more than one year in prison for his conviction *only if* he was convicted by a *general* court-martial. Consequently, I believe that the Commission had to present substantial evidence to support the finding that DiSalvatore was convicted by a general, as opposed to a special court-martial, a burden that the Commission failed to satisfy. (R.R. at 118a.)

In this regard, the only evidence that matters is Exhibit No. 1,[2] which contains various documents from the record of DiSalvatore's trial. Within Exhibit No. 1, the only document that pertains directly to whether DiSalvatore was convicted by a general or special court-martial is Action and Order No. DNO26–92. (R.R. at 99a–100a.) This piece of evidence, which consists of two pages, is critical because it *alone* shows that DiSalvatore was convict-

---

1. The majority treats this case as if it arose out of the court system of the Commonwealth of Pennsylvania. Under our state court system, the court of common pleas would have jurisdiction over a first-degree felony charge of aggravated assault and would be able to impose the maximum sentence permitted for that charge.

I fail to see how this court can determine whether a particular sentence *could* be imposed on a person without considering the sentencing power of the court with jurisdiction over the matter. Indeed, the majority

does not cite any legal authority for the proposition that the military *must* assign a particular case to a court-martial with the authority to impose the maximum penalty for the alleged offenses.

2. Examining the evidence presented, I agree with the majority that the Commission's Exhibit Nos. 3 and 4 are not competent to support a finding that the court martial was general. (*See* majority op. at 315.) Exhibit No. 2, which is simply a portion of the Manual for Court–Martial, is not relevant to the issue. (R.R. at 103a–08a.)

**318** ■

ed of a criminal offense. Therefore, it must be examined carefully.

The caption on the first page of Action and Order No. DNO26–92 indicates that a general court-martial was convened, and the first paragraph below the caption states that DiSalvatore "was arraigned" at a general court-martial. (R.R. at 99a.) The fact that a general court-martial was convened and that DiSalvatore was arraigned before it does not necessarily mean that he was convicted and sentenced by the general court-martial.[3] Indeed, on the same page, under the heading "AC-TION," it states: "In the **Special Court–Martial** of ... [DiSalvatore], tried on 8 April 1992, the sentence is approved and ordered executed." (R.R. at 99a.) (Emphasis added.) Thus, the evidence shows that, although DiSalvatore may have been arraigned before a general court-martial, his trial was before a *special* court-martial.

The second page of Action and Order No. DNO26–92, signed by the convening authority, Paul K. Van Riper, Brigadier General, U.S. Marine Corps, indicates that DiSalvatore was tried, convicted and sentenced by a *special* court-martial. This is evident from the caption, which reads: "**SPECIAL COURT–MARTIAL** CONVENING AUTHORITY'S ACTION & ORDER NO. DNO26–92 CONT'D." (R.R. at 100a.)

Finally, the Director of the Administrative Support Division for the U.S. Marine Corps certified Action and Order No. DNO26–92 as **Special Court–Martial** Order (SPCMO) No. DNO26–92. (R.R. at 18a–19a, 94a.) I note that, in cases where the Department of Transportation (DOT) suspends a license as the result of a conviction involving a motor vehicle, the report of the clerk of courts to DOT is sufficient to establish the conviction. *Department of Transportation v. Johns,* 153 Pa.Cmwlth. 312, 621 A.2d 1064 (1993). Likewise, here, the Director's certification stating that the convening authority's or-

der is a *special* court-martial order establishes that DiSalvatore was convicted by a special court-martial.

Having considered the evidence presented by the Commission, I conclude that the Commission failed to meet its burden of proving with substantial evidence that DiSalvatore could have received a sentence of more than one year in prison for his aggravated assault conviction.

Accordingly, I would reverse the Commission's order revoking DiSalvatore's certification as a municipal police officer.

---

**3.** The record indicates that, in addition to the general court-martial, a summary court-mar-

tial was convened and that DiSalvatore appeared before it. (R.R. at 97a.)